Affirmed and Memorandum Opinion filed May 27, 2008








Affirmed and Memorandum Opinion filed May 27, 2008.

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-07-00319-CR

NO. 14-07-00320-CR

_______________

 

JESUS PEREZ, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

                                                                                                                                               


On Appeal from the 182nd District Court

Harris County, Texas

Trial Court Cause Nos. 1077919 &
1077918

                                                                                                                                               


 

M E M O R A N D U M   O P I N I O N

Jesus Perez appeals his robbery
conviction in five issues, asserting that: (1) the trial court erred in denying
appellant=s Batson challenge; (2) there was legally insufficient evidence to
prove appellant indicated to German Lechuga that he had a firearm; (3) there
was factually insufficient evidence to prove appellant indicated to German
Lechuga that he had a firearm; (4) there was legally insufficient evidence to
prove appellant told Sandra Rios that he had a firearm; and (5) there was
factually insufficient evidence to prove appellant told Sandra Rios he had a
firearm.  We affirm.








Background

Witnesses testified that appellant
committed two robberies between 9 a.m. and 10 a.m. on July 24, 2006.  The first
took place at East Tex Auto Paint store, where appellant confronted German
Lechuga and Lechuga=s fellow employees Marco Guerrero and Miguel Cruz.  During
the confrontation, appellant put his hand in his pocket and said, AWell, we=re going to do something here.@  He then asked for money.  Appellant
threatened that someone might get Apopped@ or Ablowed up@ if he did not get the money. 
Appellant unsuccessfully attempted to get Lechuga=s gold ring, but settled for $5 from
Lechuga and $20 from Guerrero.  Appellant then left the store.  

In the parking lot, appellant
approached Sandra Rios as she was getting into her car after leaving the Delta
Finance store located near the East Tex Auto Paint store.  Addressing her in
Spanish, with one hand  under his shirt, appellant told her not to move and
said he had a gun.  She gave her car keys to appellant, went back inside Delta
Financial, and notified the police.  Appellant fled the scene in Rios= car.

Several hours later, police observed
Rios= car in the parking lot of the
Hou-Tex Inn, approximately two miles from the East Tex Auto Paint Store.  They
observed appellant exiting the driver=s side of Rios= car.  Surveillance was conducted on
the vehicle, and appellant was arrested when he returned to the car.  A toy
gun, which did not belong to Sandra Rios, was recovered in the backseat of Rios= car.

Analysis

Jury Selection








Under article 35.14 of the Texas Code
of Criminal Procedure, a party may utilize a peremptory strike to exclude a
potential juror without assigning a reason for exercising the strike.  See
May v. State, 738 S.W.2d 261, 268 (Tex. Crim. App. 1987).  However,
excluding a person from jury service because of race violates the Equal
Protection Clause of the Fourteenth Amendment to the Untied States
Constitution.  U.S. Const. amend. XIV; see Batson v. Kentucky, 476 U.S.
79, 88-89 (1986); see also Tex. Code Crim. Proc. art. 35.261 (Vernon
2006).  A party challenging an opposing party=s exercise of a peremptory strike
under Batson bears the burden of persuading the trial court regarding
racial motivation.  See Ford v. State, 1 S.W.3d 691, 693 (Tex. Crim.
App. 1999). 

A Batson challenge is reviewed
using a three-step analysis.  Snyder v. Louisiana, 128 S.Ct. 1203, 1207
(2008); Shuffield v. State, 189 S.W.3d 782, 785 (Tex. Crim. App. 2006). 

First, the defendant must make a prima
facie showing that the State made a race-based strike of an eligible venire
member.  Shuffield, 189 S.W.3d at 785.  

Second, the burden shifts to the
State to provide a race-neutral reason for the strike.  Id.  A reason is
race-neutral if it is based on something other than the race of the venire
member.  Hernandez v. New York, 500 U.S. 352, 360 (1991).  The second
step of this process does not require a  persuasive or even plausible
explanation.  Purkett v. Elem, 514 U.S. 765, 768 (1995).  AAt this [second] step of the inquiry,
the issue is the facial validity of the prosecutor=s explanation. Unless a
discriminatory intent is inherent in the prosecutor=s explanation, the reason offered
will be deemed race neutral.@  Id.  While the reason given must relate to the case
being tried, it Aneed not rise to the level justifying exercise of a challenge
for cause.@  Batson, 476 U.S. at 97.  Such a requirement would virtually
eliminate the purpose of peremptory strikes.  See Lamons v. State, 938
S.W.2d 774, 777 (Tex. App.CHouston [14th Dist.] 1997, pet. ref=d).  We must accept the trial court=s finding that the State offered a
race-neutral reason for a peremptory strike unless it is clearly erroneous.  Gibson
v. State, 144 S.W.3d 530, 534 (Tex. Crim. App. 2004).  








Third, the trial court must determine
if the defendant carried his burden to prove purposeful discrimination by a
preponderance of the evidence.  Shuffield, 189 S.W.3d at 785. AWe will not overturn a trial court=s finding that the State=s race-neutral explanation was valid
unless the record establishes that the finding was clearly erroneous.@  Eli v. State, No.
14-04-00305-CR, 2005 WL 2875058, at *2 (Tex. App.CHouston [14th Dist.] Nov. 3, 2005, no
pet.); see also Williams v. State, 804 S.W.2d 95, 98-101, 107 (Tex.
Crim. App. 1991) (upholding removal of six African American jurors for
race-neutral reasons, leaving an all-white jury).  However, if even one juror
was dismissed for racial reasons, a new trial is mandated.  Whitsey v. State,
796 S.W.2d 707, 716 (Tex. Crim. App. 1989).

With respect to the first step in the
Batson analysis, appellant contends the State excluded all qualified
African-American venire members remaining after removals for cause leaving him
to be tried by an all-white jury.  Following strikes for cause, the venire
panel included three African-Americans B jurors 3, 20, and 24 B each of whom was struck leaving an all-white
jury to weigh the evidence.[1]         We
need not further address the first step under Batson because the State
offered race-neutral explanations and the trial court ruled on the ultimate
question of discriminatory intent.  These circumstances render moot the
preliminary issue of whether a prima facie showing was made.  Hernandez,
500 U.S. at 359.

Turning to the second step in the Batson
analysis, the State provided these reasons for the removal of the three
African-Americans:

[THE STATE:] As for Juror Number 3, Juror 3 said Awords alone are not enough . . . .@

* * *

 

[THE STATE:] 24 was one of the first ones that said
she was robbed and gave an indecisive answer when she said whether or not it
would impact her . . . I struck her because . . . the fact that she was a
nanny.

 

* * *

[THE STATE:] 20 was rehabilitation and no jury
service, which is the same reason I struck 30; and those are my reasons.

 

See Batson, 476 U.S. at 96-98 (when defendant
presents a prima facie case, the burden of proof shifts to the State to come
forward with neutral explanations for its peremptory strikes). 








This brings us to the third step of
the Batson analysis.  The trial court found that the State=s reasons were race-neutral and
overruled the Batson challenge.  This finding on intent must be upheld
unless it is clearly erroneous.  Snyder, 128 S.Ct. at 1205.  In an
effort to establish clear error, appellant assails as pretext the explanations
offered for striking jurors 3, 20, and 24. 

We note that the pretext arguments
appellant now articulates on appeal were not presented to the trial court. 
After appellant requested a Batson hearing, the State responded with the
already quoted explanations for the three challenged dismissals.  Appellant
made no further argument at the Batson hearing and asked no questions
after the State gave its explanations. The trial court was uncertain that a
prima facie case had been made.  The trial court nonetheless concluded, A[I]n an abundance of caution if
somebody disagrees with me at a later date, then I find that [the State=s] reasons would be race-neutral and
[appellant=s] motion will be overruled.@

It was incumbent upon appellant to
establish that the State=s proffered reasons were mere pretext, and to do so by a
preponderance of the evidence.  In reviewing the trial court=s findings for clear error, we take
into account the absence of further argument or factual development by
appellant at the Batson hearing.  See Wamget v. State, 67 S.W.3d
851, 859 (Tex. Crim. App. 2001) (rejecting Batson challenge where
appellant failed to identify additional evidence that the State=s strike was based on race beyond
statement that juror was Aborn in Liberia,@ and did not query the State further
at trial regarding its stated reason); Williams, 804 S.W.2d at 101 (the
appellant must Asustain his burden of persuasion establishing purposeful
racial discrimination by the State=s use of peremptory challenges thus
rebutting those race-neutral explanations@); see also Purkett, 514 U.S.
at 769B70 (analysis of a Batson challenge
does not end with the second step, where the State provides race-neutral reasons,
because the burden never leaves the defendant to show purposeful discriminatory
intent; trial court=s determination may only be set aside if it is not fairly
supported by the record); Eli, 2005 WL 2875058, at *2 (AWe  will not overturn a trial court=s finding that the State=s race-neutral explanation was valid
unless the record establishes that the finding was clearly erroneous.@).








 Appellant contends on appeal that
pretext was established because venire member 3 was dismissed in reference to
his belief that words would not be enough to constitute a robbery even though
venire member 14, a caucasian person, gave the same answer and was not
dismissed.  The State counters that venire member 14 qualified his answer to
the satisfaction of the State, while venire member 3 did not. On this record,
the trial court did not commit clear error in finding there was no intentional
discrimination.  See Gibson, 144 S.W.3d at 534 (juror who qualifies an
answer is not the same as juror who does not); see also Lamons, 938
S.W.2d 778 (Apotential jurors commonly possess similar objectionable characteristics,
but in varying degrees . . . jury selection often hinges >on the interaction of a number of
variables and permutations=@) (quoting Cantu v. State, 842
S.W.2d 667, 689 (Tex. Crim. App. 1992)).

Appellant challenges on appeal the
dismissal of venire member 20,  who was removed after he answered Arehabilitation@ when asked what he thought the
purpose of the criminal justice system is and stated that he had never served
on a jury before.  Both service on a jury and beliefs concerning the purpose of
the criminal justice system are valid reasons for peremptory strikes.  See
Levy v. State, 749 S.W.2d 176, 178 (Tex. App.CHouston [14th Dist.] 1988, pet. ref=d).  Appellant argues that the State
received the same answer of Arehabilitation@ from venire members 18, 25, 32, and
40, each of whom was retained on the all-white jury.  Appellant also argues
that jurors 18, 25, and 32 had never served on a jury.  However, Athe record must reveal more then the
mere fact that the objectionable characteristic of a stricken juror was also
possessed by accepted jurors of a different racial background.@  Lamons, 938 S.W.2d at 778; see also
Cantu, 842 S.W.2d at 689.  On this record, the trial court did not commit
clear error in finding there was no intentional discrimination.  See Snyder,
128 S.Ct. at 1211 (recognizing that Aa retrospective comparison of jurors
based on a cold appellate record may be very misleading when alleged
similarities were not raised at trial@).








Appellant also contends on appeal
that venire member 24 was excluded because she was African-American.  The State
explained her dismissal based on her occupation as a nanny, and the fact that
she had been robbed and was indecisive as to whether this fact would affect
her.  On this record, the trial court did not commit clear error in finding
there was no intentional discrimination.  See Davis v. State, 822 S.W.2d
207, 211 (Tex. App.CDallas 1991, pet. ref=d) (occupation is a valid
race-neutral reason).  

Appellant=s first issue is overruled.

Legal and Factual Sufficiency

In reviewing legal sufficiency of the
evidence, we view all of the evidence in the light most favorable to the
verdict to determine whether, based on that evidence and the rational
inferences therefrom, a rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt.  Hooper v. State, 214
S.W.3d 9, 13 (Tex. Crim. App. 2007).  This standard of review applies to both
direct and circumstantial evidence cases.  King v. State, 895 S.W.2d
701, 703 (Tex. Crim. App. 1995). We do not resolve any conflict of fact, weigh
any evidence, or evaluate the credibility of any witnesses, because this is the
trier of fact=s function.  Fuentes v. State, 991 S.W.2d 267, 271 (Tex. Crim.
App. 1999); King, 895 S.W.2d at 703.  In reviewing factual sufficiency,
we view the evidence in a neutral light to determine whether the evidence
supporting the verdict is so weak, or so outweighed by the contrary evidence, 
that the verdict is clearly wrong and manifestly unjust.  Roberts v. State,
220 S.W.3d 521, 524 (Tex. Crim. App. 2007), cert. denied, 128 S. Ct. 282
(2007).

Appellant was indicted as follows:

 








The duly organized Grand Jury of Harris County, Texas,
presents in the District court of Harris County, Texas, that in Harris County,
Texas, JESUS PEREZ, hereinafter styled the Defendant, heretofore on or about
JULY 24, 2006, did then and there unlawfully, while in the course of committing
theft of property owned by German Lechuea (sic), hereafter styled the
Complainant, and with intent to obtain and maintain control of the property,
intentionally and knowingly threaten and place Complainant in fear of imminent
bodily injury and death, by indicating that Defendant was in possession of a
firearm . . . .[2]

                                                                               

                                                                               

* * *

 

The duly organized Grand Jury of Harris County, Texas,
presents in the District court of Harris County, Texas, that in Harris County,
Texas, JESUS PEREZ, hereinafter styled the Defendant, heretofore on or about
JULY 24, 2006, did then and there unlawfully, while in the course of committing
theft of property owned by Sandra Rios, hereafter styled the Complainant, and
with intent to obtain and maintain control of the property, intentionally and
knowingly threaten and place Complainant in fear of imminent bodily injury and
death, by telling Sandra Rios that the Defendant was in possession of a firearm
. . . .

 

Appellant contends that a rational
trier of fact could not have found that appellant indicated he was in
possession of a firearm to Lechuga, or told Rios he was in possession of a
firearm, because there Ais no such proof.@

 To find appellant guilty of the
charged offense, the jury had to find beyond a reasonable doubt that appellant
(1) while in the course of committing theft of property (2) with intent to
obtain and maintain control of the property (3) intentionally and knowingly
threatened Lechuga and Rios and put them in fear of imminent bodily injury and
death by (4) indicating (to Lechuga) and stating (to  Rios) that he was in
possession of a firearm.  See Tex. Penal Code ' 29.02 (Vernon 2006); see Hooper,
214 S.W.3d at13; King, 895 S.W.2d at 703 (same standard applying to
circumstantial evidence cases).  On appeal, appellant challenges only the legal
and factual sufficiency of the evidence that he indicated to or told the victims
he possessed a firearm.[3]








Appellant=s primary argument seeks to
distinguish between a Afirearm@ and a Agun.@  Appellant argues that a gun is not always a firearm. 
Appellant contends that the indication or statement he had a gun is not
equivalent to indicating or stating he had a firearm.  Therefore, he contends,
the proof at trial was insufficient for a jury to find appellant indicated or
said he was in possession of a firearm.

Appellant argues that Agun@ is a broader term than Afirearm,@ and can include non-lethal types of
guns.  To support this argument, he relies on Benevides v. State 763
S.W.2d 587, 588-89 (Tex. App.CCorpus Christi 1988, pet. ref=d).  This reliance is misplaced
because Benevides states: 

The factfinder, however, may draw reasonable
inferences and make reasonable deductions from the evidence as presented to it
within the context of the crime . . . .  Absent any specific indication to the
contrary at trial, the jury should be able to make the reasonable inference,
from the victim=s testimony that a Agun@ was used in the commission of a crime, that the gun
was a firearm . . . .  Appellant=s
threatening the victim with the gun in itself suggests that it is a firearm
rather than merely a gun of the non-lethal variety . . . . 

 

Id. at 588-89 (citations omitted).  This court also has
rejected the proffered distinction between a Afirearm@ and a Agun.@  Evidence is sufficient for a
rational jury to conclude a Afirearm@ was used when only a Agun@ is mentioned at trial.  Carter v.
State, 946 S.W.2d 507, 509-10 (Tex. App.CHouston [14th Dist.] 1997, pet. ref=d) (testimony that defendant used a
gun was sufficient to prove he used a firearm as charged in the indictment); see
also Wright v. State, 591 S.W.2d 458, 459 (Tex. Crim. App. 1979) (Atestimony using any of the terms >gun,= >pistol,= or >revolver= is sufficient to authorize the jury
to find that a deadly weapon was used@ in an aggravated robbery).  Logical
inferences that a firearm was utilized fall within the sole purview of the
jury.  See Hooper, 214 S.W.3d at 13; Ketchum v. State, No.
14-05-01083-CR, 2007 WL 1079898, at *2 (Tex. App.CHouston [14th Dist.] April 12, 2007, 
pet. ref=d). 








At trial, Lechuga testified that
appellant put his hand under his shirt; corralled Lechuga=s co-workers and Lechuga himself into
a corner; and threatened that someone could get Ablowed up@ if they did not comply.  This led
Lechuga to believe appellant had a gun even though appellant did not actually
use the term Agun.@  Lechuga further testified that, believing appellant had a gun, he gave
appellant all the money he had.  Appellant also tried to get Lechuga=s ring, but because it was hard to
get off and because Lechuga=s co-worker placed $20 on the counter, appellant disregarded
the ring and fled with the money.  Lechuga stated that appellant had a gun,
that he was afraid, and that he thought appellant might hurt or kill him if he
failed to give appellant the money.  This evidence is sufficient.  See
Burton v. State, 230 S.W.3d 846, 853 (Tex. App.CHouston [14th Dist.] 2007, no. pet.)
(upholding the conviction of defendant who never displayed a weapon because a
written or verbal demand for money amounts to an implicit threat and reasonably
placed teller in fear of bodily injury). 

Sandra Rios testified that appellant
also robbed her.  She testified that appellant approached her while she was
entering her car; told her in Spanish not to move; and told her that he had a
gun.  She further testified that appellant had his hand in the Acuff of his pants@ and beneath his shirt, and that she
believed he had a weapon.  She testified that she believed appellant had a gun
and that she was shaking in the aftermath of the robbery.

 Because the jury weighs witness
credibility and the strength of the testimony presented, it was well within the
jury=s prerogative to believe Lechuga=s testimony that appellant indicated
he possessed a firearm.  See Fuentes, 991 S.W.2d at 271.  Lechuga
testified that appellant did so by both his actions and his words; this
evidence, viewed in a light most favorable to the verdict, is sufficient for a
rational trier of fact to have found that appellant indicated to Lechuga that
he possessed a firearm.  Hooper, 214 S.W.3d at 13. Likewise, when viewed
in a neutral light, the evidence is not so weak, or so outweighed by contrary
evidence, as to render the verdict clearly wrong and manifestly unjust.  See
Roberts, 220 S.W.3d at 524.








The jury also acted within its
discretion to believe Sandra Rios= testimony that appellant told her he
possessed a firearm.  See Fuentes, 991 S.W.2d at 271.  The testimony of
Sandra Rios, taken in a light most favorable to the verdict, is sufficient for
a rational trier of fact to have found that appellant told Rios that he
possessed a firearm.  Hooper, 214 S.W.3d at13.  Likewise, when viewed in
a neutral light, the evidence is not so weak, or so outweighed by the contrary
evidence, as to render the verdict clearly wrong and manifestly unjust.  Roberts,
220 S.W.3d at 524.

Appellant=s second through fifth issues are
overruled.

Conclusion

The trial court=s judgment is affirmed.

 

 

 

/s/        William J. Boyce

Justice

 

 

 

Judgment rendered and Memorandum
Opinion filed May 22, 2008.

Panel consists of Chief Justice
Hedges, and Justices Anderson and Boyce.

Do Not Publish C Tex. R. App. P. 47.2(b).

 

 









[1]           A criminal defendant may object to
race-based exclusions of jurors when the defendant does not share the same race
as the rejected venire persons.  Powers v. Ohio, 499 U.S. 400, 402
(1991). 

 





[2]           The jury charge tracks the language of the
indictment, adding: AUnless you so find from the  evidence beyond a reasonable
doubt, or if you have a reasonable doubt thereof, you will acquit the defendant
and say by your verdict >Not Guilty.=@





[3]           The phrases Aby indicating that Defendant was in possession of a firearm@ and Aby telling . .
. Defendant was in possession of a firearm@
are not in the Code.  Because these phrases were added to the indictment, it
became the State=s burden to prove these facts.  Brown v. State, 212
S.W.3d 851, 860 (Tex. App.CHouston [1st
Dist.] 2006, pet. ref=d).