

## NUMBERS 13-11-00410-CR AND 13-11-00411-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

JOHNNY ADAME,                                                                            Appellant,

v.

THE STATE OF TEXAS,                                                                      Appellee.

### On appeal from the 117th District Court
### of Nueces County, Texas.

## MEMORANDUM OPINION

### Before Justices Rodriguez, Benavides, and Perkes
### Memorandum Opinion by Justice Rodriguez

Appellant Johnny Adame challenges his convictions under two separate indictments for aggravated robbery with the use of a firearm. *See* TEX. PENAL CODE ANN. § 29.03(a)(2) (West 2011). The jury returned guilty verdicts, and the trial court imposed a sentence of sixty years' confinement as a habitual offender in each case, with the sentences to run concurrently. *See id.* § 12.42 (West Supp. 2011). By three issues in

this consolidated appeal, Adame complains of (1) insufficient evidence to support his convictions; (2) improper jury argument; and (3) a violation of his right to a speedy trial. We affirm.

## I. BACKGROUND[1]

### A. The Payless Shoe Store Robbery (Trial Cause Number 09-CR-2670-B)

Payless Shoe Store employee Guinevere Guerrero testified that when Adame approached her, he said, "Don't say anything, just put the money in the bag," and he showed her the barrel of a gun. According to Guerrero, Adame repeated himself and showed her the whole gun. Guerrero testified that Adame pointed the gun at her, in her direction, and she agreed that she was in fear of bodily injury or death. Later, Guerrero testified that Adame had a gun, that this gun had a barrel, and that she felt the gun was capable of causing serious bodily injury or death.

Nicole Cano, another Payless Shoe Store employee on duty at the time of the robbery, testified that when Adame asked for money, she saw "the front end of what appeared to be a gun." Cano explained that "[a]s he got agitated . . . he leaned in further. [Adame] never really pulled [the gun] out completely that [she] could see."

### B. The Bank Robbery (Trial Cause Number 09-CR-3972-B)

BBVA Compass Bank employee Natalie Najar testified that Adame walked up to her at the Bank and said, "You can help me now." According to Najar, Adame displayed a weapon, a black gun that looked like her husband's Glock. Najar testified she felt that the gun could cause her serious injury or death. On cross-examination, Najar explained

---

[1] Because this is a memorandum opinion and the parties are familiar with the facts, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* TEX. R. APP. P. 47.4.

2

that the gun she saw was not a Glock, but had that body type. Najar agreed that she did not think that she could not tell whether the gun was a firearm or a BB gun.

Officer Robert Pena, a senior officer with the City of Corpus Christi Police Department, also testified. He stated, without objection, that during his investigation of the robbery, Najar indicated to him that Adame had used a black, semi-automatic pistol.

## II. DISCUSSION

### A. Sufficiency of the Evidence

#### 1. Standard of Review and Applicable Law

In a sufficiency review, we consider the entire trial record to determine whether, viewing the evidence in the light most favorable to the verdict, a rational jury could have found the accused guilty of all essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Padilla v. State*, 326 S.W.3d 195, 200 (Tex. Crim. App. 2010) (quoting *Jackson*, 443 U.S. at 319). When the accused threatens the victim with a gun, the act itself suggests that the gun is a firearm rather than merely a gun of the non-lethal variety, such that the factfinder may draw the reasonable inference or make the reasonable deduction that the gun used in the commission of the crime was a firearm. *Cruz v. State*, 238 S.W.3d 381, 388 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd); *Benavides v. State*, 763 S.W.2d 587, 589 (Tex. App.—Corpus Christi 1988, pet. ref'd).

3

We measure sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The Texas Penal Code provides, in pertinent part, that a person commits robbery if the person, "in the course of committing theft . . . and with intent to obtain or maintain control of the property, . . . intentionally, knowingly, or recklessly causes bodily injury to another . . . ." TEX. PENAL CODE ANN. § 29.02 (West 2011). The offense is elevated to aggravated robbery when the person uses or exhibits a deadly weapon. *See id.* § 29.03(a)(2) (West 2011). Thus, the hypothetically correct jury charge would contain these elements.

### 2. Use of a Firearm

By his first issue, Adame contends that the testimony regarding his use of a gun was not sufficient to establish that he used a firearm, as set out in the indictment. We disagree. Following this Court's precedent in *Benavides,* we conclude that such an inference or deduction—that Adame used a firearm—was permissible from the evidence presented. *See* 763 S.W.2d at 589; *see also Lewis v. State*, No. 10-09-00308-CR, 2012 Tex. App. LEXIS 86, *13-14 (Tex. App.—Waco Jan. 4, 2012, no pet.) ("Testimony using any of terms 'gun,' 'pistol' or 'revolver' is sufficient to authorize the jury to find that a deadly weapon was used.") (citing *Wright v. State*, 591 S.W.2d 458, 459 (Tex. Crim. App. 1979); *Price v. State*, 227 S.W.3d 264, 266-67 (Tex. App.—Houston [1st Dist.] 2007, pet. dism'd, untimely filed) (holding, based on testimony by one victim that the appellant put a gun in her face and by second victim that the appellant pointed a gun at him, the jury could have found beyond a reasonable doubt that the gun the appellant used and exhibited during

the robbery, which was never recovered, was a firearm); *Brown v. State*, 212 S.W.3d 851, 860-61 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (op. on reh'g) (holding that the evidence was legally sufficient to support a finding that the gun used was a firearm based on witness testimony that a gun was pointed at her and the children); *Davis v. State*, 180 S.W.3d 277, 286 (Tex. App.—Texarkana 2005, no pet.) (holding that the evidence was legally sufficient to allow the jury to conclude that the appellant used a firearm where the victim testified that appellant pointed a gun at her and she was afraid she was going to die that night, even though she was not asked to identify the type of weapon and the record contained no other relevant evidence on that point)). Viewing the evidence in the light most favorable to the verdict, we conclude that it was reasonable for the jury to infer that serious bodily injury could result from Adame's use of the weapon, described as a gun, and to deduce that the gun used in the commission of the crime was a firearm. *See Cruz*, 238 S.W.3d at 388; *Benavides*, 763 S.W.2d at 589. In other words, a rational jury could have found all essential elements of the offense beyond a reasonable doubt, including that Adame used a firearm in the commission of both robberies. *See Jackson*, 443 U.S. at 319; *see Laster*, 275 S.W.3d at 517; *Williams*, 235 S.W.3d at 750. We overrule Adame's first issue.

**B.    Jury Argument**

Adame complains, by his second issue, about the prosecutor arguing to the jury that both Najar and Guerrero testified that Adame used a "firearm." Adame contends that the prosecutor's final argument was blatantly false and entirely contrary to the evidence because the witnesses, in fact, testified that Adame used a "gun." He also generally asserts that this argument was prejudicial.

5

In closing, Adame's counsel stated, "[Y]ou need someone to come in here and tell you that it was a firearm, that's how it's indicted, a firearm, not a bb gun, but a firearm, a firearm."   He further argued that the Payless employees "didn't tell you that they saw a firearm.   They told you they looked, but one of them said that she saw something that looked like a gun, but she didn't say or couldn't say that it was a firearm."   Adame's counsel continued, "Ms. Cano didn't see it because she was standing behind the individual and that's it.   That's the evidence as far as the firearm is concerned."

The prosecutor argued twice, without objection, regarding the "firearm" evidence. First, he argued, with regard to the Payless Shoe Store robbery, that Guerrero "told you [the jury] it was a gun, it was a firearm," because she had seen a gun before and saw the barrel, and that in her opinion it was a deadly weapon capable of causing serious bodily injury or death.   The prosecutor also argued that he proved the gun used in the Bank robbery was a firearm because Najar had stated, "It resembled a Glock.   My husband has one, it was a firearm, it was a gun, I was in fear of bodily injury or death during that time."

Failure to object to jury argument forfeits the right to raise the issue on appeal. TEX. R. APP. P. 33.1; *Threadgill v. State*, 146 S.W.3d 654, 667, 670 (Tex. Crim. App. 2004); *Simpson v. State*, 119 S.W.3d 262, 268 (Tex. Crim. App. 2003); *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996).   There is an exception, which would allow preservation of especially egregious error by a motion for mistrial instead of an ordinary objection; however, it still requires a contemporaneous motion in order to preserve error. *Estrada v. State*, 313 S.W.3d 274, 303 (Tex. Crim. App. 2010).   This exception does not allow the defendant merely to stand mute at the time the error is committed.   *Id.*   In this

6

case, Adame did not object or move for a mistrial at the time the prosecutor made the arguments in question, and he waived error. *See* TEX. R. APP. P. 33.1; *Estrada*, 313 S.W.3d at 303.

Even had Adame preserved error, the prosecutor's argument that the witnesses had effectively shown that the gun was a firearm was a proper response to Adame's challenge. *See Guidry v. State*, 9 SW.3d 133, 154 (Tex. Crim. App. 1999) (providing that proper jury argument includes, among other things, responses to opposing counsel's argument and reasonable deductions from the evidence). It was also a proper inference or deduction from the evidence of the robberies in question. *See id.*

We overrule Adame's second issue.

## C.     Right to a Speedy Trial

By his third issue, Adame asserts that the trial court abused its discretion when it denied his motion to dismiss on speedy-trial grounds. We disagree.

### 1.     The Facts

The clerk's record reflects that Adame was initially indicted on August 13, 2009, in Cause Number 09-CR-2670-B, for the aggravated robbery of Guerrero and on November 19, 2009, in Cause Number 09-CR-3972-B, for the aggravated robbery of Najar. Adame acknowledges that, at that time, he was in custody in another county, having been indicted on September 30, 2009 for two other offenses. It is also undisputed that Adame was convicted of those offenses on December 2, 2010.[2] On May 4, 2011, Adame filed a

---

[2] At the end of the speedy trial hearing, the State offered State's Exhibit 1, which reflects that Adame was indicted on September 30, 2009, in Williamson County, Texas, for aggravated kidnapping and evading arrest and that he was found guilty of these charges and sentenced on December 2, 2010, in the 277th District Court in Williamson County. The State urges that, although this exhibit was not admitted into evidence, the trial court clearly considered it in its determination that the delay between the December 2, 2010 judgments in Williamson County and the March 2011 bench warrant was not unreasonable.

motion to dismiss both causes in Nueces County, a motion based on speedy-trial grounds.

At the May 11, 2011 hearing on his speedy-trial motion, Nueces County Sheriff's Clerk Raquel Ramos testified that on September 28, 2009, when Nueces County became aware that Adame was in custody in Travis County, a detainer was placed on him so that he would be available later to answer the charges in Cause Number 09-CR-2670-B. A similar detainer was placed on him on December 17, 2009 to answer the charges in Cause Number 09-CR-3972-B. Ramos also stated that Adame was transferred by a bench warrant to the Nueces County Jail on March 21, 2011. Adame was convicted and sentenced in these aggravated assault cases on June 29, 2011.

### 2. The Law

Constitutional speedy-trial claims are determined on an ad hoc basis by balancing the four *Barker* factors: (1) length of the delay; (2) the reason for the delay; (3) the assertion of the right; and (4) prejudice to the accused. *Cantu v. State*, 253 S.W.3d 273, 280 (Tex. Crim. App. 2008) (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)). While the State has the burden of justifying the length of delay, the defendant has the burden of proving the assertion of the right and showing prejudice. *Id.* In reviewing the trial court's ruling on a speedy-trial claim, the appellate court should apply a bifurcated standard of review: an abuse of discretion standard for the factual components and a de novo standard for the legal components. *Id.* at 282; *Zamorano v. State*, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002) (en banc). In addressing the evidence at a speedy-trial hearing, all of the evidence must be viewed in the light most favorable to the trial court's ultimate ruling. *Cantu*, 253 S.W.3d at 282. Specifically, appellate courts defer not only

to the trial court's resolution of disputed facts, but also to its right to draw reasonable inferences from those facts. *Id.* (citing *Kelly v. State*, 163 S.W.3d 722, 726-27 (Tex. Crim. App. 2005)).

### 3. Length of the Delay

The *Barker* test is triggered by a delay that is unreasonable enough to be "presumptively prejudicial," which the court of criminal appeals has not definitely defined. However, the court of criminal appeals has held that a delay of four months is not sufficient to trigger the presumption, while a delay of seventeen months is sufficient. *Id.* at 281. In the present case, there was a delay of some twenty-one months in the Payless Shoe Store robbery and eighteen months in the Bank robbery. This delay weighs in favor of a finding that Adame's right to a speedy trial was denied. *See id.*

### 4. Reason for the Delay

That an appellant was being prosecuted on other charges constitutes a valid reason for the delay in bringing him to trial. *Easley v. State*, 564 S.W.2d 742, 745 (Tex. Crim. App. 1978); *see Dragoo v. State*, 96 S.W.3d 308, 314 n.4 (Tex. Crim. App. 2003); *Cerf v. State,* 366 S.W.3d 778, 787-88 (Tex. App.—Amarillo 2012, no pet. h.); *see also McIntosh v. State*, 307 S.W.3d 360, 367 (Tex. App.—San Antonio 2009, pet. ref'd) (mem. op.). Until December 2010, Adame was being held and tried in another county on separate charges. Thus, that portion of the delay finds some justification in the record. *See Cerf*, 366 S.W.3d at 788. And, deferring to the trial court's right to draw reasonable inferences from the facts, it was reasonable to infer that some time was required between the December 2, 2010 final judgment in Williamson County and the March 2011 transfer to Nueces County for Adame to complete the resolution of those charges and any related

9

post-trial proceedings before he could be sent to answer the unrelated charges in Nueces County. *See Cantu*, 253 S.W.3d at 282. This factor, then, weighs in favor of the State.

### 5. Assertion of the Right

According to the court of criminal appeals, "repeated requests for a speedy trial weigh heavily in favor of the defendant, while the failure to make such requests [and instead making requests for dismissal of the charges,] supports an inference that the defendant does not really want a trial, he wants only a dismissal." *Id.* at 285. And, relevant in this case, "[t]he longer [the] delay becomes, the more likely a defendant who wished a speedy trial would be to take some action to obtain it. Thus inaction weighs more heavily against a violation the longer the delay becomes." *Dragoo*, 96 S.W.3d at 314 (quoting G. Dix & R. Dawson, *Texas Criminal Practice and Procedure* § 23.40 (2d ed. 2001)). In this case, Adame made no request for a speedy trial prior to his May 2011 motion to dismiss on speedy-trial grounds. This factor weighs against him.

### 6. Prejudice to the Accused

When a court analyzes prejudice to the accused, it must do so in light of the defendant's interests that the speedy-trial right was designed to protect, including: (1) the right to prevent oppressive pretrial incarceration, (2) the right to minimize the accused's anxiety and concern, and (3) the right to limit the possibility that the accused's defense will be impaired. *Barker*, 704 U.S. at 532; *Cantu*, 253 S.W.3d at 285; *Dragoo*, 96 S.W.3d at 316. Of these types of prejudice, the last is the most serious "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Cantu*, 253 S.W.3d at 285 (quoting *Dragoo*, 96 S.W.3d at 316).

Special considerations concerning prejudice may apply to a defendant who is

incarcerated on other charges, as noted in *Chapman v. Evans*. 744 S.W.2d 133, 137 (Tex. Crim. App. 1988) (en banc). Such a defendant "may (1) lose the possibility that he might receive a sentence at least partially concurrent with the one he is presently serving; (2) have the duration of the present imprisonment increased and conditions under which he must serve his sentence greatly worsened; and (3) suffer from the same anxiety and depression of the defendant at large under a pending charge." *Id.* (citing *Smith v. Hooey*, 393 U.S. 374, 378 (1969)). However, as in other cases generally, while a defendant is incarcerated on a separate offense, the main concern remains whether his "ability to defend himself is prejudiced by the delay." *Dragoo*, 96 S.W.3d at 315 (citing *McCarty v. State*, 498 S.W.2d 212, 218 (Tex. Crim. App. 1973)). In particular, concerns about oppressive pretrial incarceration do not apply while the defendant is confined for other crimes. *See Bailey v. State*, 885 S.W.2d 193, 202 (Tex. App.—Dallas 1994, pet. ref'd). Finally, although affirmative proof of particularized prejudice is not essential to every speedy-trial claim, any presumption of prejudice is extenuated by the defendant's acquiescence in the delay. *Dragoo*, 96 S.W.3d at 315 (citing *Doggett v. U.S.,* 505 U.S. 647, 655 (1992)). Delays much longer than the present one have not justified a speedy-trial dismissal when the defendant's failure to assert the right and other factors weigh against dismissal. *See Shaw v. State*, 117 S.W.3d 883, 891 (Tex. Crim. App. 2003) (twenty-nine month delay); *Dragoo*, 96 S.W.3d at 316 (three and one-half year delay).

Having the burden of showing prejudice, Adame has directed this Court only to the length of delay. *See Cantu*, 253 S.W.3d 280. Adame has not shown prejudice from the period or condition of his incarceration, from anxiety or depression, or from any of the

11

other factors relevant to our analysis. *See id.* Adame has presented no specific evidence to show that his ability to defend himself was prejudiced by the delay. *See id.* In particular, Adame has pointed to no witness or evidence of benefit to the defense upon which the delay had any effect. This factor, therefore, weighs against Adame.

Accordingly, on balance, the *Barker* factors favor the State and support the trial court's decision to deny Adame's speedy-trial challenge. We overrule Adame's third issue.

### III. CONCLUSION

We affirm the judgments of the trial court.

NELDA V. RODRIGUEZ
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the 2nd
day of August, 2012.